It is still barely good morning, Your Honors. Chief Justice Gregory. Barely. Barely. Judge Duncan, Judge Floyd. My name is Christopher Brown, and I have the privilege of representing the estate of Wayne Jones in this appeal from a district court's order denying the request to withdraw admissions deemed admitted inadvertently. That decision came following a remand from this court. It was an inadvertent failure to respond resulting in being deemed admitted. That was my way of saying it. This court previously remanded the case so that the district court would review the 36B factors given that the admissions themselves resulted in what amounted to a dispositive motion. And so I'm here today to persuade this panel that the district court abused its discretion. And in discovery orders, there is discretion, but it is an abuse of discretion to make a decision that is, one, either arbitrary or irrational, two, that fails to consider the judicially recognized factors that constrain the exercise of discretion. That was satisfied in this instance. And the third, that it relies on erroneous factual or legal premises. And I submit that points one and three are applicable here. The rule 36B factors are clear. They're not disputed. The first is that whether or not allowing withdrawal would promote the presentation of the merits of the case. And the second factor is the prejudice to the other party, the appellees, or defendants in this case, of having to perhaps prove those facts or having to go to trial. Starting with the second point, because I believe respectfully it's easier to resolve, the prejudice to the parties. There were a litany of cases that were cited by both parties. And if we look at Conlon and Mumford and McClanahan v. Aetna and Fisherman's Wharf and Somerville v. Dobson, and last but not least, the MetPath case, and ranking them in amount of prejudice, I'd say MetPath must be at the bottom of that rung. And where this court found, well, there isn't a whole lot of prejudice here, because the responses came 30 days late, but the court didn't feel comfortable that that was enough to find district court abuse of discretion. And recognizing that as being sort of the bottom rung of prejudice, where even this court hesitated but found unconfined abuse of discretion. Here we're talking about two days late. If we have a discussion about what the cutoff is for determining when prejudice ensues to the nonmoving party, being the party not moving to withdraw its admissions, all the other factors in these cases aren't even applicable here. The dispositive motions deadline hadn't run. Discovery hadn't passed. Discovery hadn't been engaged in with the reliance upon these admissions on these facts. This is about a quick turnaround, as this court will ever see. Did you ever file a Rules of 36B motion to withdraw or amend? No, Your Honor. Part of the problem here is that the district court was in a bind of your creation. It could have grappled with that in a more timely manner. It could have. But I'm comfortable that this court's remand order resolved that in adopting that the submitted responses to admissions in effect a motion to withdraw those inadvertently admitted. The opposition to the motion to deem them admitted twice filed would be considered a motion to withdraw. I understand, but it didn't give the district court an opportunity to consider the issue before the clock kept running. Right. So what Your Honor is getting at is the fact that the court viewed in its reviewing the prejudice as this being a request made three years later. In fact, it wasn't quite three, but whatever the date was. And I responded, of course, that this was actually two days later. The court just failed to recognize it at the time. Well, it wasn't. Now, please. Well, it wasn't counsel to trial counsel. That's something that should have been done. We can talk about that. But not necessarily by the district court if no motion is filed. It's not the district court's fault. Well, if the case law is fairly clear that So the district court should have affirmatively considered a motion to withdraw in the absence of one having been made? Well, I think the district court should have recognized that filing responses to requests for admissions or opposing a motion to deem them admitted is viewed as a motion to withdraw. Did anyone bring that to the court's attention? Not at that time. That was my only point. I wasn't trying to argue with any substance of it. Your point is well made. I think it was the subject of the lengthy dissent as well in the remand order. But we are where we are, and we were happy to have gotten there. And once we're there, for the prejudice to be put on, for the prejudice to be the three-year passage of time when in fact there was a request to, as the case law interprets it, withdraw them two days later. Then I had difficulty with her finding that it was a three-year delay and thus the regimen. But in the sense of the matter being brought to the court to be addressed, it happened in part because you didn't file, the motion wasn't filed. That's my only point. There is a passage of time. I'm not quite sure you could say that perhaps the court didn't give sufficient weight to grappling with the reasons for the motion not having been filed. But the point is there had been the delay, which wouldn't have occurred had the motion to withdraw been timely filed. I think it helps me, of course, to look at it as the remand order advising the district court that it had failed to do something it should have done at the time. Which is recognizing that this essentially made this a dispositive motion. It had the obligation to review the 36B factors. Did it or did it, that's what the district court did. After the remand. Yeah. But the remand order was pointing out that it wasn't done at the time, which is when it should have been done. It should have been done. It would have been done. We're going around in circles. But I'm not going to let you put the responsibility for whoever's failure it was to file a motion to withdraw solely defeated the district court. That's my only point. And I think you don't disagree with that. Well, I don't disagree that it should have been done. I do feel that the district court should have recognized on its own, independently, what I'm doing here is going to result in this case being dismissed. That is a dispositive motion based on the fact that these admissions have been deemed admitted. And if that's the case, I need to review these 36B factors myself. I cannot leave this to the magistrate judge. Exactly when was the motion to withdraw made? Well, under the case law, Judge Floyd, the responses were made two days late, which can effectively be viewed as a motion to withdraw the inadvertently deemed admissions given the late responses. But you should have filed a motion as soon as you realized the mistake was made. Certainly should have been. Don't take comfort in this comment. I was a district judge. Had a motion been made promptly, I'd let you withdraw. However, 36B is a permissive rule and we got to look at what the judge, on remand, what the judge thought about Martinsville's case vis-à-vis the admissions and that kind of thing. It's a little bit of like, you know, who has the right of way? So when the defendants acted so proactively, they filed their first motion to deem them admitted the day the responses were due. And it was denied as being premature. And that was opposed by the estate. And then it was refiled a day or two later, and that was opposed. So you sort of get the situation where we've got this two-way street happening. Should the estate have also filed a point for withdrawal based on Rule 36B? Yes. But in opposing, which is why the case law says what it says, in opposing, the district court should recognize that they are, in fact, requesting to withdraw the admissions that are deemed admitted. And I don't think that's too much for a district court judge. I mean, they get it. They understand in opposing the motion to deem them admitted, they are, in fact, moving to withdraw the inadvertently admissions deemed admitted. And the reason the case law is as it is is because they believe that this court feels that district court judges should recognize that. And having been remanded, it brings up an interesting issue. Is this a three-year late request now being presented to the district judge for the first time? Or is it a request? Was it a remand saying to the district court, you should have recognized this? This was a dispositive result given the admissions were deemed admitted. I think it should be recognized as giving you another breath of life. I don't think it's quite as ‑‑ I don't think it sanctions necessarily what was done. And my only point in raising it is that I think it is a context within which the district court acted and informs our analysis. And it would probably be helpful, at least from my perspective, for you to focus on that. You think that the district court abused its discretion, but one of the factors that it's relied on is the prejudice and the passage of time. It is. And here I thought that was my easier factor. But I do feel that the remand order essentially says to the district court that the district court erred. It doesn't just say we've decided that, you know, fault of nobody, this probably should go back. I wouldn't proceed necessarily on the basis of that assumption. Well, let me say it this way. It was remanded to say, well, we have a dismissal based on requests for admissions deemed admitted, which resulted in that being a dispositive motion, and when that occurs, the 36B factors must be reviewed. Sending it back because the district court did not do that. Very well, Your Honor. At least for my purposes. Certainly. And I think a district court sitting with requests for admissions and a magistrate judge's ruling on them, and they come to you. But you also didn't object to it. That is correct. I'd like to think that that was resolved by this court's prior remand order. We've gotten over that hurdle, thankfully. Yeah, it is. It is resolved by us. District court can't tell us it's too late to give a remedy in a case where we found there was an issue. It's not about putting blame on anybody. In other words, there will be a totality that says, well, you remanded it, but I think it's just too late to do this now. I'm going to put all the time. No, that's why we go back to the analysis of what it would have been at the time. You look at those things, but to say, oh, it's been three years, we knew that. Correct. We knew that. That would have been at the top rung of my cases for prejudice. There would be no need to waste everybody's time, I respectfully would think. And that's how I viewed it. That's how I viewed it when I briefed it for the district court. That took away the discretion of the district court to even consider that factor? Well, no, it's not going to take discretion away, but it can't be based on an erroneous legal or factual premise. And asserting that it was a three-year late request is an erroneous factual premise. Well, there was a three-year late request. I mean, we sent it back for the district court to look at the, well, maybe we're getting back into that. Well, let me just say this as my ten seconds run. I've saved seven minutes. Except this court did find that the responses and the oppositions to the motions the dean admitted were requests to withdraw. So if they were requests to withdraw, the request to withdraw was made then. And it might be a tough situation. It might be an uphill battle. It might be something we certainly want to avoid in the future because the passage of time can hurt things, although there hasn't been that allegation. That's the situation. The request was made two days later. I don't think we can really get past that. We can sort of say, well, technically, Mr. Brown, we view your request was made two years late. However, in reviewing prejudice, we're going to view this differently. Maybe the court will come to an opinion that says that. But at this time, I think I feel comfortable with the fact the request was made two days later. For my purposes, could you just quickly tell me why the district court abused discretion? On the second prong, for relying on an erroneous factual premise that the request came three years late. There's no other basis for holding that factor in favor of the defendants. On the first prong, it's relying on an erroneous factual premise. That is, if you're looking at Scott v. Harris in the U.S. Supreme Court and the Whit v. Bowman case out of the Western District of Virginia, video evidence. I don't have to go as far as to say it supports my client's position, the estate's position. I have to say it does not result in a rejection of the estate's position. But more than that, it does support the estate's position. And it was an erroneous factual premise for the district court to say that the record supported the self-serving statements of the officers. And I'll see you on my reserved time. Thank you. Thank you, Mr. Brown. Mr. Saverin. Good afternoon. Thank you, Chief Judge Gregory, Judges Duncan and Floyd. My name is Philip Saverin. I represent the appellees in this case. As to the discussion that was just had by counsel, I wanted to point out that I think it's relevant to the calculation of whether or not the district court exercised her discretion appropriately. That although there was a motion filed to have the request deemed admitted, and although the appellant in this case did respond to that, they did not respond with any of the Rule 36B factors that I think this case involves. The responses at that point had to do with the calculation of the days. And then, of course, there was the issue about not appealing the magistrate court's ruling. And I understand that this court on remand determined that the district court, because of the unique circumstances, should consider whether or not those factors applied. And, in fact, that's what happened. Once it went back to the district court, what she did is she entered an order asking both sides to present briefs on a certain date. And then she provided another date, and she said, I want both sides to then file the responses to the other side's briefs. In our brief, the appellee's brief, we cited to the videotape, we cite videotapes plural, we cited to the deposition testimony. We also put in additional evidence that was not in the court record but had been exchanged during discovery. And that was a picture of the knife. I know there was some concern, the previous appeal, about whether or not there was anything to corroborate the admission that Mr. Jones had a knife and wouldn't put it down. So we put in evidence of a photo of the knife of the state police, West Virginia State Police investigation, that showed the wounds to Officer Staub as well as the treatment. The appellant's presentation was these admissions are dispositive, and therefore they should not be, they should be allowed to be withdrawn because they're dispositive. And the case law they cited for that, particularly it's a case called Conlon, says that that's true, that that meets the first factor when that's the only evidence of that issue. In other words, if the only thing there is in the record to show that there was a knife was an admission, well, maybe then it meets the 36B factors. But if there's other evidence in the record, then there's a question about whether or not the withdrawal of the admissions would meet the first factor, which is the presentation of the case on the merits. And so that was one reason why we presented that evidence into the record. And then there was attention to the remand order that says very clearly in the last sentence, this order in no way opines on the merits of such considerations. So I think the burden was on the appellant, as it is in these Rule 30b-6 motions, to present evidence to show that withdrawing the admissions is within the court's discretion and promotes the presentation of the merits. No argument was presented, no evidence was presented. The record speaks for itself. You've seen the tape many times, because I've seen it over and over and over and over. And the one to me most telling is I think is Officer Herb. Was he the last officer to get there? I'm not 100% sure on that, Judge. You're not sure? I just don't remember what sequence. The one where there were four officers on top of him, with him. And then you see the last, the fifth officer get out of his... Oh, yes, yes. I just didn't know the name. I know you've seen it. If I've seen it twice... I just didn't associate the name. Okay. All right. It shows him on the ground. First, you can hear the audio. He's being choked. You can hear he's gurgling for breath. And you notice before they shoot him, his body never changes. You can see he doesn't raise up. He doesn't raise up at all. You can see he's there on the ground. And then they move away from him. And then five of them shoot him, what, 20-some times? Now, it seems to me that you're looking at that. If one person is choking him, what are the other three doing? They were there. You can see that. What are they doing? It's not like they were saying, okay, I think you can take him. We're going to stand back and watch and see what happens. They were on him. And then they back away. And that was the first shot. They shot him in the head, didn't they? Then they shot him in the face. I don't think there's evidence about which shot, the sequence of the shot. Oh, not the sequence. I'm talking about the shot in the head, right? And then in the face. But you can see even in the video, he never raises up at all. As a matter of fact, he was on his, what, down and right, right? He's on the right with his left shoulder up and the right down. Did you see the video? Yes, Judge, I am. I'm just waiting. No, but my question is, you're saying that there's clear evidence that in terms of corroborates what he was doing. And see, the point is that, let's say he had a knife. The question is, at the point they shot him, was that knife a present threat to them? Where it was and where that position he had been in, right? What position was he in when he was being choked? Was he on his stomach? Do you want me to answer that? No, I'm doing this because you started off, rather than looking at the 36 B factors, you came in saying, oh, it's clear here by the record. So I'm going where you took the case. Was he on his stomach when they were choking him? The video is there. You've seen it. How was his body? You can see his legs. You can see his body, the whole, before they shot him. And you can see he doesn't raise up at all. Matter of fact, he's in the same position before the shots, during the shots, and after the shots. So I'm asking you, where is that clear? Where is that? Tell me. And my response to that is I don't think that is clear from the videos. I'm sorry. What's not clear from the video? What exactly? It's not a great quality to the videos. You can see clearly his body. You can see his body. What I'm saying is you can't see exactly what position he's in, in terms of how he's moving, where the officers are, what he's doing. The fact remains that there was an officer who was cut on his hand and was cut on his side. I'm glad you mentioned that. They did an examination on the knife and there was no blood, was there? Is that right? There was no DNA found on the knife. That's correct. And Mr. Jones was wearing a glove. But what I wanted to say, Your Honor... There was no wound such as it was. How did you start out this line of response is what I'm not remembering. Did you say that the district court that the estate caret did not bring forward... That was what I thought you were saying. Not that there was none, but in response to the district court's order. Correct. And then I think Judge Gregory said that the record... But I think this is important, Judge Gregory, and whether or not I'm persuasive on it is, I guess, we'll find out. However, I would point to the appellant's own brief before this case, before this Court. And this is in the corrected opening brief. It's on page 29 of the brief, page 3551. It says, talking about the video and the poor quality of the video. It said, The confrontation on the landing is not shown on the video. The court could not determine whether Jones' hands raised was an act of aggression or whether he had a knife in his hand at that point. And we can read with that. Further, the video depicts the sounds made by the officers, but it does not depict what Jones was actually doing. That's why I think that the video itself is not sufficient to show that there was a... that the officers under the standard that we're working under, which is the soldier of the cats, whether or not there was a reasonable mistake as to the facts, or whether or not how they perceived things. I mean, we know all the standards. I don't need to go through the 2029 standard view of the officer. I know we get all that. But I think as far as relying on the video for that, I think there's an agreement on both sides that the video does not fairly depict what Jones was doing, and so we have to rely on testimony. And the factors, I'm sorry, the admissions that this court deemed were dispositive, which this court has said, this court has recognized, and the Kellins have recognized, are that Mr. Jones refused commands to stop resisting after being tased. In other words, they had  that Mr. Jones refused to drop the knife after being commanded to do so, and that Mr. Jones had stabbed an officer before the shots were fired. Now that's the material admissions that we're talking about here, and that's the ones that this court directed the district court to go back and examine, and given the opportunity to present that to the district court, the appellants did not present evidence. They said only that this is dispositive. And then in their response brief, they said something along the lines of, they went through this court's remand, they mentioned Judge Voorhees' dissent, and they said that the decision is self-evident, was the words that they used. In other words, they were relying on the fact that there was this remand to say that that alone was sufficient, because they said, look, we didn't do all these things, we had these defaults that Judge Voorhees had pointed out, and yet we were remanded. And I think that they didn't rise to the occasion with respect is what my point is. Well, let's assume that the motion in opposition to the admissions is a Rule 36 motion. Should we look at the record at that time, or as it's been supplemented for a withdrawal motion? Well, I think we should look at it on remand, because basically what this court said is a whole new ballgame. I'm sorry. Which time? At the time the opposition was filed, or at the time the case was sent back? Well, if we look at the time, I think when the case was sent back, I would say, because if we look at the time it was submitted there was no presentation there at all on the Rule 36B factors, at least this time they mentioned it. Plus, I think what this court was saying in remand is, look, these admissions are important enough that we want the district court to focus on this issue and not penalize the appeal from the magistrate's ruling, which then would have allowed this court to look at the abuse of discretion at that point. So now what we're in the position of is evidence presented in the appeal brief. And the judge, district judge, had an opportunity to look at those, because it was not presented. And ordinarily what I've done in these situations is I make a list of what are the evidence, what are the citations, and what's our response. Then I thought that we might need to have a hearing with the district judge. I thought there might be evidence presented that we'd need to discuss, but that never happened. And I understand, perhaps, Judge Gregg, your point that that wasn't necessary because we had the video, but we had the video the first time and the question for the judge is, well, look at this other evidence. What evidence do you have that shows that if we withdraw the admissions that I just mentioned, then we don't have this evidence in the record? And that's what we attempted to do. And now I can go through the evidence that they presented, and I'm happy to do that. Yes, Your Honor. ...
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd